## Rice et al. v. Pack.

March 5, 1948.

Watt M. Prichard, Judge.

Dinkle & Fannin and J. W. McKenzie for appellants.

E. Poe Harris for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Leslie H. Pack died testate March 15, 1945, a citizen of Boyd County. He executed his last will on October 11, 1944. He and Elizabeth Ross were married in 1921, and were divorced about 18 months thereafter. They remarried in 1923 and were divorced in 1933, but they and their four children continued to live in the same house until Pack's death. He was a veteran of World War I, and was 48 years of age at the time of his death. He left four children, Leslie Herbert Pack, Betty Ann Pack, Donald Joseph Pack and William Randolph Pack, who were 23, 21, 18 and 16 years of age,

respectively, when their father died. The testator was also survived by his mother, Julia Rice, who was about 75 years of age. After providing for the payment of his debts, the testator by Item 2 of his will devised to his four children the home in Catlettsburg, and by Item 3 he devised to his son, Leslie Herbert Pack, a business house in Catlettsburg known as the Pillemer Building. These two pieces of real estate were purchased by the testator in 1943, and in each instance the property was conveyed to him and Elizabeth Ross Pack, his former wife, and upon the death of either to the survivor. There is some evidence the testator discovered, after the deeds were recorded, that they contained the survivorship clauses and that he sought legal advice with the view of having the deeds corrected by striking out these clauses, but Elizabeth Pack testified that her name and the survivorship clauses were put in the deeds with the testator's knowledge and consent. Since Elizabeth Pack survived the testator, nothing passed under Items 2 and 3 of the will. By Item 4 of the will the testator devised two pieces of real estate in Catlettsburg known as the Leftwich property and the Phil Carter property to his mother, Julia Rice, during her natural life with remainder to his four children, share and share alike. By Item 5 he bequeathed to Julia Rice, in trust, all of his money with the provision that upon her death it should be divided equally among his children. The combined value of the real estate devised by Item 4 of the will was $3,500, and the money bequeathed in trust by Item 5 amounted to $6,000. By item 6 the testator appointed his son, Leslie Herbert Pack, executor of the will and trustee with power to collect the rents from the property devised to his mother for life, and to pay to her the income from the real estate and to distribute to her a portion of the cash as same was needed for her actual support and maintenance. Leslie Herbert Pack was in the United States navy when his father died, and was unable to serve as executor and trustee. He declined to qualify and the will was probated in the Boyd County Court on June 14, 1945, upon the petition of his sister, Betty Ann Pack, and she qualified as administratrix with the will annexed. In December, 1945, Julia Rice brought an action in the Boyd Circuit Court for a construction of the will and for an accounting by the ad-

ministratrix with the will annexed for the rents collected from the real estate devised to Julia Rice for life. On March 4, 1946, Leslie Herbert Pack appealed to the Boyd Circuit Court from the order of the Boyd County Court probating his father's will. He named his sister and two brothers contestees along with his grandmother, Julia Rice, and they have been named appellants with Julia Rice on this appeal, but their interests and the interest of their brother are identical. They testified for the contestant, and their grandmother, Julia Rice, was really the only contestee. Her interest alone, which is a life estate in about $9,500 worth of property, will be adversely affected if the will is set aside.

Mental incapacity was the sole ground of contest. This question was submitted to the jury and they found against the will. On this appeal it is contended that the evidence was insufficient to take the case to the jury on the question of mental capacity and the court should have sustained the motion of the contestee, Julia Rice, for a directed verdict for the will. The evidence shows that the testator began to fail physically two or three years before his death. He was examined by a physician in 1943 or the early part of 1944, and it was found that he was suffering from tuberculosis. He entered the veterans' hospital at Huntington, West Virginia, but remained only a short time. He went to North Carolina and entered a hospital there where he remained until some time in the summer of 1944 when he returned to his home in Catlettsburg. He had been advised to remain in bed and rest, but he spent part of each day at his place of business in Catlettsburg where he operated a beer parlor. He also operated a gambling establishment in Ashland which appears to have been the principal source of his income. His condition continued to grow worse, and he decided to go to Arizona for rest and treatment. On October 10, 1944, he sent for an attorney who lived across the street, and instructed him to prepare his will. The attorney made notes of the testator's wishes, prepared the will at his office the following day, and late in the afternoon took it to the testator's home. He read it to the testator and the latter took the paper, read it, stated that it was in conformity with his wishes, and signed it in the presence of the attorney and William Gates, a lifelong friend. About two

weeks later the testator left by plane for Arizona where he died in March, 1945. The only witnesses for the contestant who expressed an opinion as to the testator's mental condition were Elizabeth Pack, his divorced wife, and three of his children. Elizabeth Pack testified that prior to his illness the testator spent money freely but after his illness developed he became very frugal. He told her on one occasion he was afraid one of the boys who had worked for him was going to kill him or hold up his establishment. On another occasion he demanded that she convey to him her interest in the home and the Pillemer property. She described the occurrence as follows: "He came in one morning and said, 'You are going to the courthouse with me, lady, get your clothes on' and I said, 'Going where' and he said, 'To the courthouse' and I said, 'Les, I don't want to get married' and he said 'You are not but you are going to deed the property back to me' and I said 'That's what I have got for living twenty-five years of a living Hell and I am not going to do it' and he said, 'You will or I will blow your head off with a gun.' "

Basing her opinion on these facts, the witness stated that Leslie Pack did not have testamentary capacity. This witness also testified that the testator told her he had $5,000 in the bank and that he intended to purchase a farm and have it conveyed to his four children, subject to a life estate in his mother, Julia Rice. The witness dissuaded him from making such an investment as he might need the cash during his illness. Betty Ann Pack expressed the opinion that her father lacked testamentary capacity. She based her opinion on incidents that were trivial except perhaps in one instance when her father made a baseless and humiliating accusation when she remained away from home over night. He was hot tempered and became more irritable as his illness progressed. He was not accustomed to using choice and refined language, and the few outbursts of temper disclosed by the record, including the one related by his daughter, Betty Ann, do not indicate a lack of mental capacity. On the contrary, they were in keeping with his character. William Randolph Pack narrated no facts tending to show lack of mental capacity by his father, and he refused to express an opinion on the subject. Leslie Herbert Pack based his opinion that his

father lacked testamentary capacity on the incident concerning his sister, and the fact that the testator seemed to have more difficulty than formerly in understanding the bookkeeping of his employees. Donald Pack described one outburst of temper by his father and, basing his opinion on this incident, stated that the testator lacked testamentary capacity. The court properly excluded the answer. There was no medical testimony.

The opinions of lay witnesses constitute competent evidence in will cases provided they are based upon facts which tend to establish a lack of testamentary capacity. Bickel v. Louisville Trust Company, 303 Ky. 356, 197 S. W. 2d 444. In Dossenbach v. Reidhar's Ex'x, 245 Ky. 449, 53 S. W. 2d 731, 738 the court, in discussing the cumulative effect of evidence, said: "It is argued that the jury might have determined testamentary incapacity from the combined effect of the evidence when the individual instances were not sufficient for that purpose. It is quite true that the cumulative effect of evidence as a whole may be greater than the individual items of which it is composed. (Citations). But the mere multiplication of unsupported opinions, based on isolated and disconnected facts without probative weight, adds nothing to the strength of a case. Something cannot be made out of nothing."

The following from the same opinion is applicable in the present case: "A great number of witnesses testified, but the facts related were disconnected, isolated, and trivial, and without probative value, on the subject of testamentary capacity."

The most that can be deduced from the evidence is that Leslie H. Pack had a violent temper, was irritable and profane, and had become more frugal and less inclined to waste his money after he realized the serious nature of his illness. These attributes of themselves do not indicate lack of testamentary capacity. Cecil's Ex'rs v. Anhier, 176 Ky. 198, 195 S. W. 837. The will was not unnatural. Two of the children were more than 21 years of age and self-supporting, while the remaining two were rapidly approaching manhood. The testator's mother lived in Pike County and was married to a coal miner whose productive years as a miner were mostly behind him. We are unable to spell out of the

evidence any fact or combination of facts from which a jury could reasonably infer that the testator lacked testamentary capacity. It follows that the trial court should have directed the jury to find the paper in contest to be the last will of Leslie H. Pack.

Judgment is reversed for proceedings consistent herewith.